We move on to the third case of the day, Moore v. Wells Fargo Bank, N.A. Good morning, Your Honors. May it please the Court, I am Attorney Brian Pagel. I represent Plaintiffs Appellants Terrence and Dixie Moore in this case. Before delving into the rather complicated facts and the myriad of legal arguments here, I want to address overall the nature of the two statutes that are at issue in this action, both the Real Estate Statutes 224.77 and 224.80. Both of these statutes are remedial in nature. Both of these statutes are intended to provide protections and benefits to consumers. Both of these statutes are to be liberally administered to achieve their ends. And both of these statutes have now been the subject of litigation between the Moores and Wells Fargo that resulted in the District Court denying Mr. and Mrs. Moore a jury trial on their very serious claims of emotional distress caused by Wells Fargo's inability to answer a series of, although lengthy, very simple questions that the Moores had for Wells Fargo just prior to their house being sold pursuant to a court order. So we begin with the RESPA issues. The primary issue I want this Court to address and I want to bring to the Court's attention is that the Seventh Circuit has never ruled in any meaningful way or direct way on whether qualified written requests may include requests for information related to attempted or failed loan modifications. And this has been the subject of some dispute in lower court cases, including some of those cited here. As the Court is probably aware, under RESPA, a qualified written request may be sent to a servicer of the loan, which Wells Fargo admittedly was here, and must relate to the servicing of the loan. Several of the lower courts in this District have held that requests related to the modification of a loan, or the attempted modification of a loan, need not be answered by servicers. And the rationale behind that decision, or those decisions, seems to be largely based on pre-amendments to the RESPA rules and a misunderstanding of either what the borrowers are requesting or what RESPA requires. Here, Judge Conley held that the Moores' requests for information related to a modification in 2011, specifically the rationale behind that and the programs they were considered for or denied, did not need to be answered by Wells Fargo, because in Judge Conley's determination, those related to loan modifications rather than to servicing of the loan. But servicing under RESPA, and under the regulations enacted after 2014 under the Dodd-Frank changes, relates to more than simply receiving payments and dispersing them, it relates to the handling of the loan. And servicers increasingly, if not exclusively, are governed with both the initial attempts to modify a loan and with the enforcement of the modification of a loan. And that's where particularly here the factual basis for the Moores' request becomes relevant and becomes an aspect of servicing. In 2011, at the time that the Moores' were entering into their modification, there was a serious and substantial question both about the interpretation or result of the modification and about Wells Fargo's role with respect to the ownership or servicing of the note at that time. As pointed out in the factual portion of our brief, Wells Fargo in the modification identified itself as the lender or note holder, but during the foreclosure that subsequently resulted a few months after this 2011 modification, Wells Fargo was represented by Deutsche Bank as potentially being only the servicer and Deutsche Bank representing itself as the note holder. So when the Moores, in 2016, asked questions about their 2011 loan modification, they were not, as many courts have held in declining a RESPA challenge to these seeking to enforce a loan modification or to correct a loan modification. They were asking for information that Wells Fargo, about what Wells Fargo did with actions it took in respect to entering into and then enforcing a subsequently modified loan. So in entering... Counsel, at that point in 2016, when Mr. Moore wrote this letter, there was already a final foreclosure judgment in the state court, correct? There was, Your Honor. So what was to be litigated with respect to the 2011 modification? Well, there are lots of things, as we're shown in this case, that were to be litigated with respect to the 2011 modification, but that's not an issue with respect to a qualified written request under RESPA. As Mr. Moore and Ms. Moore indicated in their affidavits in this case, one thing they hoped to do with their information achieved from the qualified written request was to convince the state court that they shouldn't confirm the sale and finalize the transfer of their house. But with respect to a RESPA qualified written request, you're not requesting information specifically for litigation. You're requesting information to help you answer questions you have about your loan. And so with respect to that qualified written request, it didn't matter if they could use it in litigation or intended to use it in litigation or if it would be harmful or helpful. It mattered that the request related to the servicing of the loan and set up both a question that could be answered and a question that subsequently wasn't answered. Before we go further, could I ask you what role Mrs. Moore plays in this case? Mrs. Moore is the... She was not a party to any of these transactions. She was not a party to the contracts, but Mrs. Moore resides in the house and she was a recipient of or should have been a recipient of information her husband, as the borrower on the note, obtained. So do children have claims under RESPA? Under RESPA, anyone damaged by a failure to comply with RESPA can maintain a claim for those that don't. So a child, for example, who's upset because her parents are struggling with foreclosure and all of these fights with the bank, would be able to bring a claim for emotional distress? In the appropriate case, if a child could prove a causal link between a failure by a lender to answer, then the child would potentially have a claim for emotional distress. I don't think RESPA limits it to a link. Has there been any such case in the country? I'm not aware of any case that's ever held that a non-signatory to the contract has a claim. I don't think it's ever been litigated. Neither am I. I'm sorry? And that would include Mrs. Moore as a non-signatory, correct? Well, I think the fact that no court has ever held that someone can have such a claim doesn't mean that Mrs. Moore cannot have such a claim. Can I ask you what the status of the December 2016 bankruptcy filing is at this point? They are still in their Chapter 13 bankruptcy and making payments, is my understanding. I'm not their bankruptcy counsel. Okay. And they're still living in the house? They are. Are they making payments under the plan for the house? Their bankruptcy plan requires them to make their current payments as were established by, I believe, the 2011 modification and also payments on the arrearages based on the claim Wells Fargo filed. Why don't the RESPA claims belong to the bankruptcy estate? The RESPA claims may be an asset of the bankruptcy court, but the bankruptcy court has not ever taken control of the RESPA claims. When the Moores filed... In the filing? I don't know the answer to that question. Isn't that kind of important as to whether the Moores or the Wright plaintiffs here? It would be important if Wells Fargo had challenged the Moores' standing. Wells Fargo did not challenge the Moores' standing to bring the claims. Well, that gets us into whether we're dealing with a jurisdictional question of standing which would not be waivable or whether it's the real party and interest question, but it's a problem. I believe that the question would be whether it's a real party and interest claim because the trustee in bankruptcy on behalf of the bankruptcy estate could take control of the Moores' claims and litigate them on behalf of the bankruptcy estate, but in a Chapter 13 case, the situation differs somewhat from a Chapter 7 in that if the Moores were to successfully obtain a judgment, they would have the option of dismissing their Chapter 13 case and thus closing the estate. So typically, at least my understanding in the Western District, is that the trustee does not intervene or require litigation of claims like these absent some good reason for the trustee to do so. So I don't know offhand without consulting the bankruptcy record if this was disclosed. The bankruptcy lawyer was aware of the pending litigation when the Chapter 13 was filed and I believe this was addressed by stipulation in the bankruptcy court. I'm just not 100% certain at this moment about that. I don't think that this would be a jurisdictional standing issue because again, the Moores have the option of dismissing their Chapter 13 at any time which would revert control of the property of the estate, including this claim, to them. With respect, going back just to... Mr. Bigel, can you identify, just say two, two of the requests that you lodged that you believe Wells Fargo did not comply with? And then after you identify them, explain the harm that followed from Wells Fargo not complying with them. At the time that all of this occurred. I will do that, Your Honor. Wells Fargo did not respond to, in particular, questions related to disbursements out of the escrow account and who those payments were made to. And Wells Fargo did not respond to a request for information concerning payments made on the account prior to 20, I believe they disclosed from 2013, certainly from 2014 on, but the request was to go back to 2010 and they did not provide an accounting back as far as the Moores wanted them to go. With respect to the escrow payments and the lack of accounting of the payments, Mr. Moore filed in this court an affidavit that asserted that after signing the February 2011 modification, he did not miss any payments between February and June of 2011. June 2011 is when Deutsche Bank, not Wells Fargo, reopened the state court foreclosure case and asserted that there had been a default as of February 2011. Under that 2011 modification, the first payment was not due until March 1st, 2011. So obtaining an accounting of the payments, especially in 2011, what Mr. Moore hoped to do was to convince the state court that the original basis for reopening had been faulty. State court foreclosures in Wisconsin are equitable in nature and the court would have had the option of reopening or simply delaying confirmation. But with respect to the escrow payments, Mr. Moore was provided information that showed that he had paid $24,000 over the course of the three years provided. Ten thousand of that was applied to the escrow account. Mr. Moore testified in his affidavit that he never had an escrow account. Much of the payments were from force-placed insurance. Mr. Moore testified that he always had insurance in place and that Wells Fargo would not have needed to force-place insurance. The gist of that would likely- Do he document those insurance payments at any point, or the coverage? He didn't have the proof of the payments going back prior to 2014 at this point, so his documentation is simply his testimony that he had insurance in place at the time at this point. So for summary judgment purposes, he testified that he always had current homeowner's insurance through a different policy than that paid by Wells Fargo. And he could check with the insurance company to see if they had any records of that coverage? We were not able to obtain any documentation of that. The lawsuit was brought in federal court, was it not, before Wells Fargo fully sent you their letter and the attached documents? The lawsuit was filed in federal court on the 30th day, the 30th actual calendar day after the qualified written request was received by Wells Fargo. The filing simply was in error. The lawsuit was prepared and ready to go. A copy of the lawsuit was filed with opposing counsel in the state court. A copy of the as-yet-unfiled complaint was filed with opposing counsel in the state court. Staff at my firm simply thought they should then file the federal complaint, even though the 30 business days under RESPA had not yet run. So it was filed before the response was received. The response was received the same day the federal lawsuit was filed. Can I go back to follow up on Judge Scudder's question about the Moore's dissatisfaction with answers about escrow disbursements and more recent payments? Why doesn't the foreclosure judgment essentially close the door to resulting damages or relevance? With the foreclosure judgment, matters are settled. Matters of payment and liability and the remaining debt are settled, aren't they? Well, so several things about that. First, it wasn't dissatisfaction with the answers. It was that no answers were received to those inquiries. With respect to why the foreclosure judgment itself doesn't satisfy that, as in Wisconsin, a foreclosure judgment is step one of the two-step process. The foreclosure judgment determines the rights through the final confirmation of sale. But it would, again, some... The foreclosure judgment is appealable, correct? The foreclosure judgment is appealable, yes. And is the usual practice, then, that if you have disputes about priorities or amounts that are owed, that's the time you have to take the appeal? Yes. If you want to appeal from or correct by the Court of Appeals the amount in the judgment of foreclosure, you would have to file an appeal from the original judgment of foreclosure. But that's not the only remedy a borrower has in Wisconsin. What else is there? Borrowers can also seek to litigate counterclaims maturing after pleading in Wisconsin state courts. That's under Chapter 802, I believe it's Section 09, 802.09 of the Wisconsin statutes. The counter... Litigants can also ask the court to exercise equitable discretion to amend a judgment of foreclosure either equitably or through Wisconsin Statute 806.07.1G, which allows an amendment to any equitable judgment, such as foreclosure, at any time without regard to time limits. Wisconsin litigants can also challenge the confirmation of sale or the redemption amount by obtaining this information prior to the confirmation of sale. In Wisconsin, the judgment of foreclosure fixes the amount only subject to later determination by the court. And then when it's sold, when the house is sold at a share of sale, there's a final hearing where the court will hear evidence related to the nature of the sale and the amount paid and determine if it should confirm the sale. So is the sale, has the sale occurred in this case? The sale has occurred. It was not confirmed because the moors filed their Chapter 13 bankruptcy prior to confirmation. I'm down to just 12 seconds. So if I can finish up very briefly, the court had asked about the harm from the failure to disclose that. The harm in this case particularly was that the moors between receiving the inadequate answers and going into state court had to fear the entire time that their failure to produce this information would in fact hamper their ability to litigate the case. The fact that it did in fact hamper their ability to litigate the case justifies the emotional distress that they felt at the time. And we feel that's enough of a causal connection to get to the jury and let the jury decide whether the distress they felt was from not getting answers they hoped to use to fight or from seeing their house sold. Thank you, Your Honors. Thank you, Counsel. Ms. Hammett for Wells Fargo. Good morning, Your Honors. May it please the Court. My name is Erica Hammett. I'm here today on behalf of Wells Fargo Bank. As this Court would have seen from the briefs and from its discussion with Attorney Pagel, this lawsuit is an attack or an attempt to undermine a six-year-old foreclosure judgment by the Dane County, Wisconsin Circuit Court. Appellant Terrence Moore, who was discussed as a sole borrower on the note and mortgage at issue, actually appeared in person at that foreclosure. He admitted the default. He did not contest Deutsche Bank's standing to foreclose, and he did not contest the amount that was due on the loan. He did not appeal the foreclosure judgment. For six and a half years, he did not claim that he was current on the mortgage at the time that Wells Fargo, according to Mr. Moore, directed Deutsche Bank to pursue the foreclosure. These issues are important because they bear largely on the basis for Judge Conley's decision as to the application of Rooker-Feldman and race judicata, and also as to the Moore's claim for damages. Particularly, this case changed substantially when, in opposition to our motion for summary judgment in the district court, Mr. Moore claimed for the first time that he was current when Deutsche Bank foreclosed on him in 2011. After that point, based on that allegation, Mr. Moore started alleging that he had suffered damages because Wells Fargo wrongfully caused a foreclosure. Prior to that point, the main focus of this case was the RESPA allegations. Essentially, Moore's claims are divisible into two categories, and Judge Conley recognized that in his decision. One is the claims regarding RESPA and the sufficiency of the response that he received from Wells Fargo, and the second is the claims arising under Wisconsin Statute 224.77. Those two are the claims that primarily attack the underlying foreclosure. In particular, they attack the validity of the 2001 mortgage agreement. They attack the amount due under the foreclosure. They attack, possibly, Deutsche Bank's standing and right to foreclose. And Judge Conley correctly, in his written opinion on summary judgment, dealt with those matters under the broad heading of things that this case is not about, and he correctly recognized that, and he correctly recognized that the Moores are not entitled to seek relitigation of the foreclosure. At all times that are relevant here to Wells Fargo, is your relationship with Mr. Moore that just of a servicer? In the time that I've been on the case, I was not involved in the foreclosure action back in 2012, but my understanding is Deutsche Bank is a lender, Wells Fargo is a servicer. Right. Now, Wells Fargo, I know, is a party to the original loan that gave rise to the original mortgage, and they're a party to the 2011 modification agreement. But at some point thereafter, the mortgage was sold or transferred to Deutsche Bank? No, Deutsche Bank was a lender on the original note and mortgage, and then Wells Fargo did sign, and is common practice, Wells Fargo, as a servicer, did sign on the loan modification agreement in 2011 under the line that stated lender. Yeah, all right. Yeah. And I would add at this point that if that is an issue that Mr. Moore had, that he questioned whether Deutsche Bank had standing to foreclose, because based on the signature on the 2011 loan modification agreement, he felt Wells Fargo should have been foreclosing on him, then that's an issue that he was required to raise in the foreclosure action. That's not an issue that's before this court now. The district, I apologize, the state court found that Deutsche Bank had standing and a right to foreclose, and Mr. Moore did not object to that. So plaintiff is telling us, if I understand the argument correctly, that even with a foreclosure judgment in place and time to appeal having run, nothing's really settled under Wisconsin law and practice, and I'm trying to figure out how that would fit in with what I understand to be Rooker-Feldman law more generally. Virtually every civil law system that I know of in the United States has some mechanisms to bring collateral challenges to judgments, but I don't know that that has ever really blocked, that the potential for such modifications has blocked the application of Rooker-Feldman. Sure, and if there were such modifications to be made, those modifications would need to be made through the state court, not the federal court, because Rooker-Feldman applies to prevent the lower federal courts from exercising review over a state court judgment. Right, right. We're familiar with it. Yeah. But what I'm not familiar with is the use of a federal statute to conduct discovery to try to bring collateral challenges to state court judgments. It is not something that I have seen before, or something that I have seen before so blatantly that Mr. Moore here does not contest he had a final judgment of foreclosure. He does not contest he did not appeal that foreclosure. It seems, and perhaps somewhat understandably, a last-ditch effort to avoid the consequences of his financial decisions and the litigation that occurred in the state court. But at the same time that Mr. Moore did file his suit here in the federal court, he also filed a virtually identical suit in the state court, and he captioned those claims, as counsel discussed in his original argument, as counterclaims that matured after pleading. The problem is these claims didn't, or I'm sorry, counterclaims that matured after judgment. The problem is these claims he's trying to make didn't mature after the judgment. They would have matured before the judgment. If he had an issue as to whether he was in default or not when Deutsche Bank foreclosed, he certainly would have known whether he was in default. If he had an issue whether he didn't believe that Deutsche Bank was the proper party to foreclose on him, he certainly would have known that at the time of the original foreclosure judgment. If he felt that the judgment amount wasn't correct, that's an objection he could have raised at the time of the foreclosure, and he didn't do any of those things. Was Wells Fargo a party to the counterclaim action in state court? Wells Fargo is not a party to the state court action. Is it open or closed? It's closed, except for to the extent that the sale has to be confirmed, but it can't be until the Moore's bankruptcy is dismissed. On that issue, you had mentioned was Wells Fargo a party to the state court action, and that does bring up a challenge that the borrowers had raised to the Rooker-Feldman and to the claim preclusion arguments, and I just want to note for the record that obviously claim preclusion, the very rules of claim preclusion specifically state that there has to be an identity of the parties or their privities, and here the servicer is in privity with the lender. And additionally, the nature of the claims that Mr. Moore is attempting to make here as to the validity of the note and mortgage as to the amount due, again, if he had those types of counterclaims, he needed to raise them whether it was against Wells Fargo or whether it was against the lender attempting to foreclose on him. So these are not claims that are unique to Wells Fargo. They're claims that he could just as easily have raised against the lender who was the party in the foreclosure suit. If you have nothing more to say, there's no reason you should stay under. Okay, I didn't know if you had further questions. I don't think so. Thank you, counsel. Mr. Pagle, your time has expired, but if you want one minute for rebuttal, you may have that. I will take that. Thank you, Your Honor. Specifically, on the issue of Rooker-Feldman and how it applies to these claims, the question of whether Mr. Moore or Ms. Moore should have counterclaimed against Deutsche Bank for problems in the modification process or breach of the modification process is answered by the fact that they could not counterclaim against Wells Fargo because Wells Fargo was not a party to the lower court action. They would have had to commence a separate action against Wells Fargo to complain about the handling of the 2011 modification. In response to the court's Rooker-Feldman questions, there's nothing in this case that goes against the judgment of foreclosure or the state court action whatsoever. That's being handled in the bankruptcy court. They will complete their plan and keep their house. An award of damages against Wells Fargo doesn't attack the state court judgment in any sense. The question about Rooker-Feldman is more answered by this court's holding in the Milchstein case that, inextricably intertwined, no longer is something that we look at. We're looking at claim preclusion. As counsel indicated, that really boils down to privilege. Mr. Pagle, if all of that's true, that what you said, I think it goes back to the point you made before you sat down before, and just correct me if I'm mistaken on this, and that is that the RESPA action that you really want to pursue here is truly for emotional distress damage. The emotional distress that followed from everything that we've been talking about, everything that happened. The emotional distress from the failure to respond. Is there any other form of damage at issue? The $900, Mr. Moore testified, he incurred in assessing and analyzing the RESPA violations. Okay, and that's it? That is it. All right. Thank you. Thank you, counsel. Thank you to both counsel. The case is taken under advisement.